## H. D. Mollohan v. The State.

No. 12163.   Delivered January 23, 1929.

The opinion states the case.

*Whitaker & Peticalas* of El Paso, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

MARTIN, JUDGE.—Appellant was found guilty of knowingly passing as true a forged instrument and was given two years in the penitentiary.

The record shows that R. W. and J. M. Higginbotham were the owners of a large ranch in Old Mexico, the acreage of which was estimated by some of the witnesses at 180,000 and the number of cattle on same at about 10,000. For some three or four years preceding the summer of 1927 appellant had been manager of this ranch. About October, 1927, appellant negotiated for and obtained a loan from the State National Bank of El Paso for $7250.00 and

gave as collateral security eight notes for the sum of $10,000.00 each and one note for the sum of $4,000.00, purporting to be signed by J. L. Higginbotham, a son of J. M. Higginbotham, and the payment of which notes was purported to be guaranteed by written contract signed by R. W. and J. M. Higginbotham. The four thousand dollar note was the subject of the present prosecution, it being alleged and proven that the entire number of notes as well as the purported guaranty contract were forgeries. According to appellant's theory he had a contingent interest of one-third in the said ranch, ranch equipment and live stock, the other two-thirds belonging to R. W. and J. M. Higginbotham; that a controversy had arisen between the Higginbothams and himself in Old Mexico and he had had the entire assets before mentioned impounded; that about July, 1927, in settlement of the controversies between them, J. L. or Lanham Higginbotham, acting for the said R. W. and J. M. Higginbotham, had entered into an agreement with him under the terms of which he was to be paid $84,000.00 for his interest in the ranch and cattle, conditioned upon the cattle being shipped out and the proceeds used in payment of the amount; that it was not possible to ship the cattle out owing to their being tick infested, after which a new agreement was entered into under the terms of which J. L. Higginbotham bought appellant's interest in said ranch and cattle, agreeing to pay him therefor the sum of $84,000.00 in notes and that he thereupon executed a release of his interest and surrender of a general power of attorney theretofore held by him from R. W. and J. M. Higginbotham authorizing him to manage and control the ranch and properties thereon; that appellant had left his brother in active charge of said ranch and that J. L. Higginbotham delivered to his brother eight notes in the sum of $10,000.00 and one note in the sum of $4000.00 in consummation of the latter agreement, and that his brother thereafter transmitted said notes to him, which had in turn been negotiated as collateral security to the bank, as aforesaid. Appellant maintained that if such notes and contracts were forgeries he was not aware of it. It was also shown that the Higginbothams had a few months prior to this date agreed contingently to purchase appellant's interest in the properties aforesaid for the sum of $23,000.00, which contract was never consummated. He explains this small consideration as due to the fact of the disturbed conditions in Old Mexico growing out of the then Catholic controversy, but which subsequently became less troublesome, and offered to testify that cattle having risen in price, the final purchase price was increased

to $84,000.00. It is further shown in the evidence that appellant had in fact surrendered to J. L. Higginbotham the management and control of said ranch and that he had never received anything in consideration therefor.

As corroborative of his defensive theory he offered in evidence a written contract between himself and the Higginbothams, dated in January, 1926, admitting his contingent one-third interest in the ranch and containing the further proviso that if it became necessary to sell out or move the animals and personal property and any loss occurred that he would share one-third of the loss and further providing that if for any reason he should be unable to perform his part of the contract, which was to manage the property, that any interest he might have acquired in same would forfeit and belong to R. W. and J. M. Higginbotham. This contract was rejected by the trial court upon objection that same was immaterial. As further corroborative of his theory he offered to prove that the price of cattle advanced very materially after the date of said contract and further offered to prove that he had never been paid anything for the time he managed the ranch from 1924 to 1927. He further offered to prove by J. M. Higginbotham while on the stand that he had authorized his son, J. L. Higginbotham, in July, 1927, to buy out appellant's interest in the Higginbotham ranch and cattle and to settle with him and further offered to prove by the said witness that he signed a blank note in July, 1927, authorizing his son to fill same in for the purpose of buying out appellant's interest in said property. He further offered to prove that while he was in charge of said ranch and cattle from 1924 to 1927 he had a general power of attorney to sell any and all of the cattle on the ranch. All of this testimony was rejected as being immaterial and irrelevant. Under our view of the case all of said testimony was highly material as corroborative of and tending to establish the truth of appellant's theory of the case. The fact that, at the very time appellant claims he negotiated a sale of his interest in the properties to J. L. Higginbotham, the said Higginbotham had then power to negotiate for its purchase and had in his possession a blank note to be filled in for the purchase price, is to our minds a significant circumstance tending to prove the truth of appellant's defense. We think also it was highly material to show by a written contract that appellant actually possessed a contingent interest in the properties as shown by the rejected written contract, especially since the effect of Lanham Higginbotham's testimony was to deny the existence of such an interest. It seems undisputed that

the owners of this property regarded appellant's interest worth the sum of $23,000.00 a few months prior to the date of this offense and it was important for appellant to show the reason why the price advanced from $23,000.00 to $84,000.00 by showing the conditions in Mexico and the increased value of the cattle on the ranch made so by an advancing price. By this action of the Court the jury was prevented from passing on practically all the evidence offered by appellant which tended to establish the truth of the matters relied on by him for an acquittal. Appellant further contends that the motive for the prosecution was to place him in the penitentiary so as to make compliance impossible with the terms of the rejected contract so that all his interest would forfeit under its terms to prosecuting witnesses. The jury, we think, was entitled to pass on this for whatever it was worth, and for this additional reason the contract should have been admitted in evidence.

Because of the errors of the Court in rejecting the several matters herein discussed, the judgment of the trial court is reversed and cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.